of the United States v. Wang. All right, Mr. Jacobs, good morning. You've reserved two minutes for rebuttal, so that gives you eight minutes to start. Thank you. Good morning, Your Honor. And may it please the Court. I'm Brian Jacobs. I represent John Wang on appeal. I did not represent him below. I want to focus on the District Court's Confrontation Clause error, where the District Court improperly allowed two key witnesses at Mr. Wang's trial to testify remotely via videoconference in a situation that didn't meet any of the requirements of the governing law of this Court or of the Supreme Court. Didn't meet any of the requirements. Didn't meet any of the requirements, Your Honor. In this Court's decision gigante, which I would submit should be construed narrowly, this Court said videoconferencing is permissible where, in that case, a Rule 15 deposition was not appropriate for various reasons because the witness was in witness protection at an undisclosed location with an inoperable form of cancer. And the District Judge, after holding a hearing on that witness's medical condition where both sides presented witnesses, found that the witness was unavailable because he had a then-existing infirmity in the language of Rule 804, and that a video You could also acknowledge the WITSEC, right? Correct. Which is not under 804. Correct, Your Honor. So the gigante Court went outside of 804. You're saying that we're limited to unavailability under Rule 804, right? Your Honor, I would submit that the Maryland v. Craig standard really is what should govern. Well, gigante, though, is the law of this circuit, right? Correct, Your Honor. And I would say gigante is a narrow application of Craig. There is a way to read those two decisions in harmony, and it is to say that the video testimony in gigante was necessary in the language of Craig. It was necessary because the witness there was unavailable, as this Court interpreted unavailability, and also because it served the policy of preventing the defendant and the witness from being in the same room together. And that was an important public policy. It was found in exceptional circumstances, right? Correct, Your Honor. The exceptional circumstance there was preventing these two from being in the same room together where there was the illness, there was the witness protection, and a Rule 15 deposition, importantly, wouldn't have been appropriate. None of that is this case. In this case, the two key witnesses who the district court allowed to testify by video were in Hong Kong and South Korea, respectively, and predominantly did not want to come here because of the burdens on their work, on their family, and because... You were in the middle of COVID. I mean, this was not your ordinary circumstance where I don't want to be away, fly to the States, give testimony, and come back. There were quarantines. There were all kinds of health risks and family risks. That's a little bit of an oversimplification, isn't it? You just say it was an inconvenience. Your Honor, I would submit that November 2021 was not entirely the middle of COVID. It was the tail end of COVID. Courts were in session. Trials were being held in person. And the burdens on the witnesses were the burdens of logistics, the burdens of having to be in a quarantine for three weeks and miss work, as opposed to... That's not an exceptional circumstance, to be in quarantine? I would submit that the need to quarantine is not an exceptional circumstance within the meaning of gigante. There was no reason why a Rule 15 deposition could not have taken place overseas where Mr. Won would have been able to be in the same room as the defendant and confront him in person. That is the proper way to handle this under the Federal Rules of Criminal Procedure, to have a Rule 15 deposition where the defendant is in person with the witness. The Supreme Court has recognized how much harder it is for a witness to lie or give false testimony to a defendant's face than it is in person. And that's why Rule 15... To their face rather than in person? I'm sorry. Rather than over a TV screen. I apologize, Your Honor. We addressed a similar case not that long ago in the United States versus Patterson. So, I mean, not a published decision, but nonetheless, it's a COVID case, right? Yes, Patterson, I would submit, is entirely different. As Your Honor points out, it was a summary order. It is not binding. The finding of unavailability in Patterson hinged on the health of the witness and the fact that, and this is a quote, that vaccines were not yet easily obtained and that that witness had a substantial risk of contracting COVID-19 given the witness's age and comorbidities. That was the reason for the finding of... Here it's the, at least in the case of one of the witnesses, the individual for whom he was the caregiver was at risk for COVID, and so that was a complication. It's a variation on Patterson, but isn't it pretty much the same thing as an exceptional circumstance? Your Honor, the witness who was the caregiver in this case was the substantially less important witness, Dr. Su. The star witness at the government's trial, Mr. Chen, wasn't a caregiver in that sense for an elderly person like Dr. Su or like the witness in Patterson. Mr. Chen simply did not want to be quarantined in Hong Kong upon his return there, and so the question of being a caregiver, which this court found in Patterson, amounted to an exceptional circumstance, doesn't apply. And I would submit that in Patterson, it was the need to prevent serious illness and death of the witness himself, and that does fit neatly within Rule 804's language, which speaks of then existing infirmities or physical illness. You know, that witness had comorbidities that put that witness in danger. In this case, the inconvenience to the witnesses of traveling here, which it's not even clear the record really established to the extent Giganti would require. That case, like I said earlier, had a full hearing where witnesses testified for both sides about that particular witness' unavailability. Here, the district court, in a very brief ruling, half a page of transcripts at A223 found that the standard was met and allowed what was really the star witness to testify by video. And there really can be no question on this record that that error was not harmless beyond a reasonable doubt, as it would need to be. I don't think the government seriously argues that it was harmless beyond a reasonable doubt within the meaning of the case law. That case law places a heavy burden on the government and requires establishing that the witness' testimony did not contribute to the verdict. Here, Mr. Chen's testimony was absolutely essential to Mr. Wan's conviction. He's mentioned 48 times in the government's summations. It's his testimony that is the core of the proof of Mr. Wan himself being involved in misrepresentations. He is, in all respects, a star witness here. And to the extent the court finds error, there's no question that it was not harmless beyond a reasonable doubt and a new trial is required. But backing up to the question of whether there is error in the first place, there's no reason on these facts to expand Giganti and Patterson to cover the situation in this case, which really isn't on all fours. Patterson was as far as you could possibly go with the idea that the dangers of COVID justify a finding of unavailability. It was not clear whether a Rule 15 deposition was explored in that case. Here, it certainly could have been done by Rule 15, and the defendant would have been in the room with the witness. The only reason it didn't happen is the government waited too long. It waited until just a month before trial before saying, oh, no, we need to call these witnesses, and we're going to be unable to. That is an error that is attributable to the government. Mr. Wan's rights to confrontation should not suffer as a result. And I see my time is just about up, so I'll save the rest for rebuttal unless the panel has questions. Well, let me see. There are a lot of issues, so I don't know if there are other questions that my colleagues have. All right. Thank you. You've got two minutes for rebuttal, Mr. Jacob. Thank you. Timed it just right. And now we'll hear from Ms. Evans. May I please the Court? My name is Sarah Evans. I'm an assistant United States attorney in the Eastern District of New York, and I also represented the government at trial in this case. Your Honors, I apologize. My voice is a little bit hoarse. I'm recovering from a cold. If you have trouble hearing me, please just give me a wave. Your Honors, in assessing the Confrontation Clause challenge, it's important to go back to where we were in November of 2021. This was the beginning of the Omicron wave. Courts were proceeding, trials were proceeding, but they were doing so with modifications that were appropriate to the circumstances. I would like to remind the Court that there's evidence in the record of the focus on COVID that existed at this time. For example, there was a witness who coughed a certain number of times in a prep session. This was discussed at length at trial about whether it would be acceptable to have this witness testify in person. This was a time when people were still being infected, people were still dying, and while vaccinations were available, there were breakthrough vaccinations. And it's also important to understand this was still a great time of uncertainty. We cannot look in hindsight where we are today and say, well, now we live with COVID, it's an everyday occurrence, trials are proceeding, witnesses are showing up. This was November 2021, and we were still in the middle of COVID. I'd like to respond to a few of the points that are inaccurate that counsel said in his argument just now. First, this is not an expansion of Gigante. This is an application of Gigante, just like Patterson. Counsel- Gigante was pretty expansive about the kinds of circumstances that would justify a remote two-way video, and looked to Rule 15 fairly extensively. But, of course, in most Rule 15 depositions, the defendant is able to be present. There are some circumstances in which that isn't the case. But I was troubled by the Gigante court's reliance on Rule 15 and the failure to recognize that you do have the benefit of a face-to-face confrontation, even in the context of a recorded deposition. Didn't the Gigante court rely too heavily on that? I mean, isn't the law developed in another direction? Well, Your Honor, I'd first like to point out in response to your question that Gigante set forth a standard of exceptional circumstances. It did point to the Rule 15 standard, but the Rule 15 standard and the unavailability standard is just one example of the type of exceptional circumstances that might justify remote testimony. Now, as for Your Honor's point about the sort of physical presence  Your Honor, first I would like to point out that the defendant was notified of the government's intent to call these witnesses remotely live at trial, multiple months before trial. At no point did the defendant say a Rule 15 deposition would be preferable, which, at that point, there could have been arrangements made to have a Rule 15 deposition. I'd also like to point, Your Honor, to the Gigante court's assessment of the comparison between a Rule 15 deposition and live testimony. While there may be certain aspects of physical presence with the defendant in the same room as the witness that are important, similarly, there are also aspects of a witness testifying live in front of a jury, knowing a judge is there, understanding the significance of this proceeding. Well, look, this is a great argument, but it's not a Gigante argument, right? Well, Gigante actually did say, Your Honor, that there is something that is, in fact, more protective about remote live testimony than a Rule 15 deposition. Right, but the confrontation clause is really about the defendant being able to confront the accuser. It's not about the, I mean, it's peripherally about the jury sort of getting live testimony and the things that can happen with live testimony. I mean, I think those are interesting arguments, but it seems to me that you're really relying on Gigante, right? That's correct, Your Honor. But I would also like to point out with respect to the sort of live aspect, face-to-face aspect, that the conditions under which this live testimony took place are important for the court to consider. So what happened in this case was, and this is in the record, the entire trial moved to a separate courtroom that was set up to make the remote testimony as effective as possible. There was a large screen so that the jurors could see, and I think the court said it was akin to going to a movie theater, where there was a very large screen where they could take a look at the witness's facial expressions, reactions, in a way that, if anything, potentially sort of allows a jury to assess even more closely how the witness is responding to questions. So as opposed to being in a courtroom where you're maybe a dozen feet, 20 feet away from the witness, they were sort of up close with the witness's face, as was the defendant. The two witnesses who testified remotely said that they could, in fact, see the defendant on their screen, and there was no question that the defendant could see them as well. So while there is the physical presence aspect, which we just cannot get around, that is the difference between remote testimony, the ability to have that sort of face-to-face confrontation remotely did, in fact, take place in this case. Maybe we should adopt this more broadly, just do it all by video. That's not the government's request, and that's not the issue in this case, Your Honor. Well, we would assert technology has changed and circumstances were quite different in COVID and may be different going forward. The question for this court is whether, at this time in November of 2021, the court abused its discretion in allowing the trial to go forward with remote testimony, and we submit that it did not. I mean, would you acknowledge that Gigante is a bit of an outlier among the circuits? It is a bit of an outlier among the circuits. Nonetheless, it is the law of the circuit and, while in a summary order, was recently reaffirmed by this court in the context of COVID. I would point out that the vast majority, if not the entirety, of the cases that criticized Gigante were all pre-COVID and were in earlier iterations of technology as well. And COVID was a sort of life-altering, process-altering circumstance for this court and others. Anything else you want to cover? I mean, I know there are a lot of other topics. If Your Honors have questions about any other topics, I'm happy to answer them. Otherwise, we'll rest on our papers, given that this was the sole topic that was addressed in oral argument for counsel. All right. Okay, thank you. Okay, Mr. Jacobs, you're back up. Two minutes. Thank you, Your Honor. And just a few brief responses. First, the court really should address separately the finding of unavailability and the finding of exceptional circumstances. They're subject to two different standards of review, and they really are distinct under the case law under a rigorous application of Gigante. But, again, Gigante didn't do what you're asking us to do. You're saying that unavailability turns on Rule 804 and can't go beyond 804. But Gigante considered, in making an unavailability assessment, factors that are not under 804. The fact that you're in WITSAC is not an 804 factor, right? It is not an 804 factor. Right. So you're urging us to hew very closely to 804 in deciding whether or not these witnesses were unavailable, even though Gigante didn't do that. I would argue that Gigante did not set such a broad rule that courts can simply consider unavailability broadly, and it's not an abuse of discretion as long as that standard is met. Gigante says in one very narrow and extraordinary situation, a witness is unavailable and video testimony is permissible. Well, it was so extraordinary that a WITSAC guy and the person he's testifying against can't be in the same room. I think, and he had inoperable cancer and couldn't travel. That is an 804 consideration. But the WITSAC piece, which is not an 804, which Gigante relied on, you're saying is, well, that is really exceptional because we can't put a witness and the defendant in the same room. I don't think it's the mere—I don't think you can look at that one factor and say that would amount to unavailability. I don't think Gigante says that. Gigante says these factors in combination make this witness unavailable. But isn't that what happened here? The district court found that these factors in combination make the witness unavailable and the circumstances exceptional that justify the two-way hookup. Well, the district court doesn't explain its ruling. There's almost no—there's no explanation, and the district court doesn't even use the word unavailable. It just says it's exceptional. We're going to do it in a half-page ruling in A223. I think that none of the circumstances here match up with what's in Gigante. There's no illness of the witnesses. There's no WITSEC. Well, there's an illness at least of one of the witness's parents. There's not even an illness there. There's a danger of potential illness to one of the witness's parents, but not both, and certainly not any parents of the actual star witness, who the government presented against Mr. Wan over 100 pages of the transcript in what really was a confrontation clause error that should be corrected by this court. Could you respond to Ms. Evans' point that you or your predecessor counsel never even asked for a Rule 15 deposition, knowing that this was going to be a two-way hookup otherwise? When the government first asked to call these witnesses remotely, it's a letter that's in the appendix at A79, I believe. The defense responded, and at A101 in footnote 6, my predecessor counsel said, the government's untimely notice of its intent to use VTC testimony one month before trial has effectively eliminated the option of requesting that the government instead depose these witnesses pursuant to Rule 15 and introducing their prerecorded testimony at trial. So I think at least to the extent this was litigated by law, predecessor counsel's view was that the government's request came too late. Thank you, Your Honor. And I would add, regardless, as the papers say, that the matter needs to be remanded to correct the restitution error. Yeah, we haven't talked about that, but that's something that the parties are in agreement on. Yes, Your Honor. All right. Thank you, Ms. Evans. Thank you, Your Honor. Thank you, Ms. Evans. We will reserve decision.